**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **WATERFLEET LLC,** | § | |
| *Plaintiff/Counter-Defendant,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 5-25-cv-01090-JKP-HJB** |
| | § | |
| **CARIE L. VILLANO,** | § | |
| *Defendant/Counter-Plaintiff.* | § | **JURY TRIAL REQUESTED** |

**DEFENDANT/COUNTER-PLAINTIFF CARIE L. VILLANO'S ORIGINAL ANSWER,
COUNTERCLAIMS, AND AFFIRAMTIVE DEFENSES**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Defendant **CARIE L. VILLANO** hereby respectfully files this Original Answer, Counterclaims, and Affirmative Defenses to Plaintiff/Counter-Defendant **WATERFLEET LLC**'s First Amended Complaint (the "Complaint"), filed on October 3, 2025, and would respectfully show the Court as follows:

**I.
GENERAL DENIAL**

Subject to her pending Motion to Dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure, and except as expressly admitted below, Ms. Villano denies each and every allegation against her and further denies any liability to Plaintiff. Ms. Villano expressly reserves the right to amend or supplement this Answer as may be necessary.

**II.
NATURE OF THE CASE**

1. Ms. Villano admits that the action was brought by Plaintiff for the claims asserted in Paragraph 1 of the Amended Complaint. Ms. Villano denies all other allegations in Paragraph 1.

2.     Ms. Villano admits that she received a salary of $180,000 per year as Sales Operations Manager. Ms. Villano denies all other allegations in Paragraph 2 of the Amended Complaint.

3.     Ms. Villano denies the allegations in Paragraph 3 of the Amended Complaint.

## III.
## JURISDICTION AND VENUE

4.     Ms. Villano denies that Plaintiff has properly brought claims for fraud and breach of fiduciary duty, as set forth in her pending Motion to Dismiss.

5.     Ms. Villano lacks sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 5 of the Amended Complaint, and accordingly, denies them.

6.     Ms. Villano admits the allegations in Paragraph 6 of the Amended Complaint.

7.     Ms. Villano admits the allegations in Paragraph 7 of the Amended Complaint.

8.     Ms. Villano admits the allegations in Paragraph 8 of the Amended Complaint.

## IV.
## GENERAL ALLEGATIONS

9.     Ms. Villano admits the allegations contained in Paragraph 9 of the Amended Complaint.

10.     Ms. Villano admits the allegations contained in Paragraph 10 of the Amended Complaint.

11.     Ms. Villano admits the allegations in Paragraph 11 of the Amended Complaint.

12.     Ms. Villano admits the allegations in Paragraph 12 of the Amended Complaint.

13.     Ms. Villano admits that Exhibit B contains a copy of her job description. Ms. Villano denies all other allegations in Paragraph 13 of the Amended Complaint.

14.     Ms. Villano denies the allegations in Paragraph 14 of the Amended Complaint.

15.     Ms. Villano denies the allegations in Paragraph 15 of the Amended Complaint.

16.     Ms. Villano denies the allegations in Paragraph 16 of the Amended Complaint.

17.     Ms. Villano denies the allegations in Paragraph 17 of the Amended Complaint.

18.     Ms. Villano denies the allegations in Paragraph 18 of the Amended Complaint.

19.     Ms. Villano denies the allegations in Paragraph 19 of the Amended Complaint.

20.     Ms. Villano denies the allegations in Paragraph 20 of the Amended Complaint.

21.     Ms. Villano denies the allegations in Paragraph 21 of the Amended Complaint.

22.     Ms. Villano admits that she was hired in January 2024 and that she reported to Alan Pyle. Ms. Villano admits that in July 2024, Mr. Pyle stepped down as Plaintiff's CEO. Ms. Villano admits that she began reporting to Mr. Cockrill in or around July 2024. Ms. Villano denies the other allegations contained in Paragraph 22 of the Amended Complaint.

23.     Ms. Villano admits that her employment could be terminated subject to the Employment Agreement. Ms. Villano denies the other allegations contained in Paragraph 23 of the Amended Complaint.

24.     Ms. Villano admits the allegations in Paragraph 24 of the Amended Complaint.

25.     Ms. Villano admits the existence of a controversy about the Employment Agreement, but denies the other allegations in Paragraph 25 of the Amended Complaint, and specifically, Ms. Villano denies that Plaintiff is entitled to declaratory judgment.

26.     Ms. Villano admits the allegations in Paragraph 26 of the Amended Complaint.

27.     Ms. Villano generally admits her position as set forth in Paragraph 27 of the Amended Complaint.

28.     Ms. Villano lacks sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 28 of the Amended Complaint, and accordingly, denies them.

29.     Ms. Villano admits the allegations in Paragraph 29 of the Amended Complaint.

**V.**
**COUNT I: BREACH OF CONTRACT**

30.     Ms. Villano admits and denies the allegations in Paragraph 30 of the Amended Complaint as set forth above.

31.     Ms. Villano admits the allegations in Paragraph 31 of the Amended Complaint.

32.     Ms. Villano denies the allegations in Paragraph 32 of the Amended Complaint.

33.     Ms. Villano denies the allegations in Paragraph 33 of the Amended Complaint.

34.     Ms. Villano denies the allegations in Paragraph 34 of the Amended Complaint.

**VI.**
**COUNT II: FRAUD BY OMISSION**

35.     As to the allegations in Paragraph 35 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its fraud by omission cause of action, and that this cause of action should be dismissed.

36.     As to the allegations in Paragraph 36 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its fraud by omission cause of action, and that this cause of action should be dismissed.

37.     As to the allegations in Paragraph 37 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its fraud by omission cause of action, and that this cause of action should be dismissed.

38.     As to the allegations in Paragraph 38 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its fraud by omission cause of action, and that this cause of action should be dismissed.

39.     As to the allegations in Paragraph 39 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its fraud by omission cause of action, and that this cause of action should be dismissed.

40.     As to the allegations in Paragraph 40 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its fraud by omission cause of action, and that this cause of action should be dismissed.

41.     As to the allegations in Paragraph 41 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its fraud by omission cause of action, and that this cause of action should be dismissed.

42.     As to the allegations in Paragraph 42 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its fraud by omission cause of action, and that this cause of action should be dismissed.

## VII.
## COUNT III: FRAUD

43.     As to the allegations in Paragraph 43 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its fraud cause of action, and that this cause of action should be dismissed.

44.     As to the allegations in Paragraph 44 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its fraud cause of action, and that this cause of action should be dismissed.

45.     As to the allegations in Paragraph 45 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its fraud cause of action, and that this cause of action should be dismissed.

46.     As to the allegations in Paragraph 46 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its fraud cause of action, and that this cause of action should be dismissed.

47.     As to the allegations in Paragraph 47 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its fraud cause of action, and that this cause of action should be dismissed.

48.     As to the allegations in Paragraph 48 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its fraud cause of action, and that this cause of action should be dismissed.

49.     As to the allegations in Paragraph 49 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its fraud cause of action, and that this cause of action should be dismissed.

50.     As to the allegations in Paragraph 50 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its fraud cause of action, and that this cause of action should be dismissed.

51.     As to the allegations in Paragraph 51 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its fraud cause of action, and that this cause of action should be dismissed.

**VIII.**
**COUNT IV: BREACH OF FIDUCIARY DUTY**

52.     As to the allegations in Paragraph 52 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its breach of fiduciary duty cause of action, and that this cause of action should be dismissed.

53.     As to the allegations in Paragraph 53 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its breach of fiduciary duty cause of action, and that this cause of action should be dismissed.

54.     As to the allegations in Paragraph 54 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its breach of fiduciary duty cause of action, and that this cause of action should be dismissed.

55.     As to the allegations in Paragraph 55 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its breach of fiduciary duty cause of action, and that this cause of action should be dismissed.

56.     As to the allegations in Paragraph 56 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its breach of fiduciary duty cause of action, and that this cause of action should be dismissed.

57.     As to the allegations in Paragraph 57 of the Amended Complaint, per her pending Motion to Dismiss, Ms. Villano contends that Plaintiff has not adequately pled its breach of fiduciary duty cause of action, and that this cause of action should be dismissed.

## IX.
## COUNT V: DECLARATORY JUDGMENT

58.     Ms. Villano admits and denies the allegations in Paragraph 58 of the Amended Complaint as set forth above.

59.     Ms. Villano admits that the portion provided by Plaintiff of the Declaratory Judgments Act is accurate. Ms. Villano denies the other allegations in Paragraph 59 of the Amended Complaint.

60.     Ms. Villano generally admits her position as set forth in Paragraph 60 of the Amended Complaint.

61.     Ms. Villano admits that a justiciable controversy exists as to the Employment Agreement. Ms. Villano denies the other allegations in Paragraph 61 of the Amended Complaint.

## X.
## COUNTERCLAIMS

62.     Ms. Villano began working for Plaintiff in January 2024 and was most recently employed as Sales Operations Manager.

63.     In August 2024, Plaintiff further asked Ms. Villano to take on additional responsibility, overseeing all of Marketing.

64.     Ms. Villano was a dedicated and productive employee who incurred no disciplinary or corrective action.

65.     In contrast, her colleagues and superiors routinely praise her stellar work ethic and job performance.

66.     Ms. Villano was one of the few women working for Plaintiff in a leadership role, as most of Plaintiff's leadership positions are held by men.

67.     At 51 years old, Ms. Villano was one of the oldest similarly situated employees working for Plaintiff.

68.     Ms. Villano was hired by former CEO Alan Pyle.

69.     Ms. Villano initially reported to Mr. Pyle.

70.     Mr. Pyle signed Ms. Villano's Employment Agreement.

71.     Per her Employment Agreement, which she negotiated with Mr. Pyle, and which Mr. Pyle executed on behalf of Plaintiff, Ms. Villano would be entitled to severance pay if she was terminated without cause following a change in control of Plaintiff before December 31, 2025.

72.     Ms. Villano and Plaintiff specifically agreed upon this provision to provide Ms. Villano with severance pay if Mr. Pyle as CEO ceased to be Ms. Villano's direct supervisor in the near future, and her new direct supervisor terminated her without cause.

73.     Mr. Pyle ceased serving as CEO in or around July 2024, and thereafter, Ms. Villano reported to new CEO Ken Cockrill.

74.     At all relevant times, Ms. Villano's father suffered from several physical and mental impairments which substantially limit his major life activities.

75.     At all relevant times, Ms. Villano was her father's primary caregiver.

76.     Nonetheless, Ms. Villano could perform all essential functions of her job with reasonable accommodation from Plaintiff including, but not necessarily limited to, occasional time away from work.

77.     Plaintiff could easily provide these accommodations with no impact on its business operations.

78.     In early 2025, after Ms. Villano requested leave under the Family and Medical Leave Act of 1993 ("FMLA") to care for her disabled father, Plaintiff demoted Ms. Villano and stripped Ms. Villano of several key job duties.

79.     Instead of reporting to Mr. Cockrill, Ms. Villano was reassigned to report to Director David Meyers.

80.     Mr. Cockrill stated that her marketing, sales operations, and website development responsibilities would remain unchanged.

81.     Despite these assurances, Ms. Villano's job responsibilities were significantly reduced.

82.     She was not given the opportunity to participate in any strategic development, budgeting, or forecasting of sales—all of which were key components of her job responsibilities.

83.    Mr. Meyers further told Ms. Villano that she was no longer responsible for creating a critical business report for Plaintiff's Board of Directors.

84.    Colleagues and supervisors inexplicably excluded Ms. Villano from strategic budget meetings, monthly financial reviews, Board of Directors meetings, and weekly strategic planning sales meetings.

85.    Ms. Villano's marketing and email campaign development duties were also taken away, even though co-Founder and Chairman Alan Pyle recently expressed that her highest priority was to continue focusing on marketing activities.

86.    Additionally, women employed by Plaintiff often face severe and abrasive discrimination because of their sex.

87.    At a Texas Oil and Gas Association (TXOGA) golf event sponsored by Plaintiff, Director of Business Development Casey McDermand made an inappropriate and sexually suggestive comment toward Ms. Villano.

88.    Ms. Villano was wearing a white skirt and white top, and as it began to rain, he suggested that Ms. Villano get out of the golf cart and dance in the pouring rain for the men.

89.    Ms. Villano was the only woman present among approximately eight golf carts, each carrying two to four men, many representing top oil and gas companies.

90.    This occurred during a professional event where Plaintiff provided attendees beer and water.

91.    The comment objectified Ms. Villano and contributed to a hostile work environment.

92.    Mr. McDermand repeatedly entered Ms. Villano's office unannounced and uninvited, often initiating conversations that included deeply personal and inappropriate questions of a sexual and intrusive nature.

93.     In another incident, at another work-sponsored event where employees shot clay pigeons, Mr. McDermand inappropriately wrapped his arms and hands around Ms. Villano and brushed her hair and face without her permission under the guise of giving Ms. Villano 'shooting lessons'.

94.     He pulled her body into his chest and repeatedly remarked that Ms. Villano should shoot with her "hips out" and her "tits up."

95.     At each of the next two to three shooting stations during the same event, Mr. McDermand repeated the same behavior and degrading phrase—"hips out and tits up."

96.     Several male co-workers witnessed this incident including Account Manager Matt Buchanan and Consumer Representative Manager Drew Cruthirds, who also recorded the incident on his phone.

97.     Two guests from outside companies were also present and observed the behavior.

98.     After Ms. Villano had viewed the footage, Mr. Cruthirds offered to send Ms. Villano a copy.

99.     Before he could do so, Mr. McDermand abruptly interrupted and stated in a harsh tone, "Don't send her that."

100.    This response was inconsistent with prior behavior—Mr. Cruthirds and Ms. Villano have previously exchanged photos and videos as part of her marketing responsibilities, and Mr. McDermand had never objected to anyone sending Ms. Villano media before or after this incident.

101.    Mr. McDermand has intrusively invaded Ms. Villano's personal space and touched her several times, including an incident where he came behind her desk in an enclosed area, brushed up against Ms. Villano, and put his hand over Ms. Villano's while she was seated.

102.    Mr. Cruthirds was also present for this incident.

103. When Ms. Villano stood up and admonished Mr. McDermand, he commented on her need for "therapy."

104. This was not the first time Mr. McDermand insisted on coming behind her desk and into her personal space.

105. On a previous occasion, Mr. Cockrill observed Mr. McDermand kneeling behind her desk, right up next to Ms. Villano with his face inches from Ms. Villano's.

106. It was very clear that Mr. Cockrill saw Mr. McDermand's behavior, yet he did not intervene.

107. CEO Ken Cockrill has 11 direct reports, of which only one was female.

108. On multiple occasions, Mr. McDermand touched Ms. Villano without consent by rubbing her shoulders without warning—at the workplace, in a company vehicle, and at an offsite event in Midland.

109. In September 2024, while at an offsite event in Midland, which included Mr. Cockrill and Mr. McDermand, Ms. Villano was seated in a chair in the patio area when Mr. McDermand came up behind her, began rubbing her shoulders, and handed Ms. Villano an alcoholic drink.

110. In the months following Mr. Cockrill's appointment, two senior female leaders, the controller and the business analyst, voluntarily left the company.

111. Mr. McDermand is a senior leader within the organization who had a direct impact on Ms. Villano's performance, and Ms. Villano was required to meet with Mr. McDermand several times each week.

112. Ms. Villano never reciprocated any of Mr. McDermand's behavior, which Ms. Villano found unwelcome, offensive, and unprofessional.

113. Ms. Villano witnessed younger, less experienced individuals—primarily male—being given expanded roles and greater visibility, while her responsibilities were diminished.

114. Rather than being supported or consulted for her expertise, Ms. Villano was systematically excluded from decision-making, stripped of leadership functions, and ultimately terminated.

115. Despite her continued opposition, Plaintiff's behavior continued unabated.

116. On April 3, 2025, her legal counsel sent correspondence outlining her complaints to Mr. Cockrill and HR Director Matthew Herschell.

117. On April 10, 2025, Plaintiff's legal counsel sent a response claiming—for the first time—that Ms. Villano was "experiencing work performance issues for some time."

118. She has continued to perform as well as, or better than, similar situated colleagues.

119. Plaintiff never contacted Ms. Villano to discuss any of her concerns, and Ms. Villano is unaware of any corrective action taken by Plaintiff in response to her complaints.

120. On May 30, 2025, Ms. Villano filed a charge of discrimination setting forth these complaints with the U.S. Equal Employment Opportunity Commission and the Texas Workforce Commission Civil Rights Division.

121. Ms. Villano and Plaintiff met for a formal mediation to resolve Ms. Villano's claims on August 6, 2025.

122. After this mediation was unsuccessful, Plaintiff terminated Ms. Villano on September 2, 2025, citing performance issues that it had never previously discussed with her as: (1) pretext for terminating her; and (2) a means of unlawfully attempting to avoid paying the severance described above.

123. Plaintiff then further retaliated by filing its meritless claims in this action, while Ms. Villano was still bound by her duty to exhaust administrative remedies as to her discrimination claims, in an attempt to be first-to-file and avail itself of fee shifting under the Declaratory Judgment Act.

**Count One:    Breach of Contract in Violation of Texas Common Law.**

124. Ms. Villano restates all prior and subsequent paragraphs as if set forth verbatim herein.

125. The Employment Agreement described above was a valid and binding agreement enforceable under Texas law.

126. Ms. Villano dutifully performed all conditions and obligations required of her under the Agreement.

127. Despite Ms. Villano's full performance, Plaintiff breached the Employment Agreement by failing to pay the severance described therein, despite terminating her without cause following a change in control.

128. As a direct and proximate result of Plaintiff's breach of contract, Ms. Villano has incurred economic and noneconomic damages, including lost severance benefits, compensatory damages, consequential damages, and incidental damages.

129. Further, undersigned counsel presented this breach of written contract claim to Plaintiff's counsel more than 30 days ago, yet Plaintiff has unjustifiably refused to pay the just amount owed. Accordingly, Ms. Villano seeks and is entitled to attorney's fees and costs pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code.[1]

**Count Two:    Sex Discrimination in Violation of Title VII of the Civil Rights Act ("Title VII").**

130. Ms. Villano restates all prior and subsequent paragraphs as if set forth verbatim herein.

---

[1] *See* Tex. Civ. Prac. & Rem. Code § 38.001, *et seq.*

131.    Under Title VII, an employer may not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's [sex]."[2]

132.    Actionable discrimination under Title VII can include a hostile work environment based on sex.[3]

133.    Ms. Villano, based on her sex, was a member of the class of employees protected under Title VII.

134.    Ms. Villano was immensely qualified for her position, as demonstrated by her stellar work performance.

135.    Plaintiff discriminated against Ms. Villano based on her sex by, *inter alia*, forcing her to endure a hostile work environment based on sex, stripping away her job duties because of sex, demoting her because of sex, terminating her because of sex, and filing this action against her because of sex.

136.    As a direct and proximate result of Plaintiff's sex discrimination in violation of Title VII, Ms. Villano has incurred economic damages including, *inter alia*, lost wages, lost benefits, and lost earning capacity. Ms. Villano seeks reinstatement, or in the alternative, front pay.

137.    As a direct and proximate result of Plaintiff's sex discrimination in violation of Title VII, Ms. Villano has also incurred noneconomic damages including, *inter alia*, mental anguish, emotional pain, damage to reputation, and loss of enjoyment of life.

---

[2] 42 U.S.C. § 2000e-2(a).
[3] *See, e.g., Harris v. Forklift Systems, Inc*., 510 U.S. 17 (1993).

138.    Ms. Villano also seeks compensatory and punitive damages in the maximum amount allowable by law based on the malice and/or reckless indifference Plaintiff demonstrated toward her protected rights under Title VII.[4]

139.    Ms. Villano further seeks attorney's fees, expert fees, and costs incurred in pursuing her Title VII claim.[5]

**Count Three: Sex Discrimination in Violation of Chapter 21 of the Texas Labor Code ("TCHRA").**

140.    Ms. Villano restates all prior and subsequent paragraphs as if set forth verbatim herein.

141.    Under TCHRA, "[a]n employer commits an unlawful employment practice if because of [sex] the employer: (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment[.]"[6]

142.    Ms. Villano, based on her sex, was a member of the class of employees protected under TCHRA.

143.    Ms. Villano was immensely qualified for her position, as demonstrated by her stellar work performance.

144.    Plaintiff discriminated against Ms. Villano based on her sex by, *inter alia*, forcing her to endure a hostile work environment based on sex, stripping away her job duties because of sex, demoting her because of sex, terminating her because of sex, and filing this action against her because of sex.

---

[4] *See* 42 U.S.C. § 1981a.
[5] *See* § 2000e-5(k).
[6] TEX. LABOR CODE § 21.051.

145.   As a direct and proximate result of Plaintiff's sex discrimination in violation of the TCHRA, Ms. Villano has incurred economic damages including, *inter alia*, lost wages, lost benefits, and lost earning capacity. Ms. Villano seeks reinstatement, or in the alternative, front pay.

146.   As a direct and proximate result of Plaintiff's sex discrimination in violation of the TCHRA, Ms. Villano has also incurred noneconomic damages including, *inter alia*, mental anguish, emotional pain, damage to reputation, and loss of enjoyment of life.

147.   Ms. Villano also seeks compensatory and punitive damages in the maximum amount allowable by law based on the malice and/or reckless indifference Plaintiff demonstrated toward her protected rights under the TCHRA.[7]

148.   Ms. Villano further seeks attorney's fees, expert fees, and costs incurred in pursuing her TCHRA claims.[8]

**Count Four:  Associational Disability Discrimination in Violation of the Americans with Disabilities Act ("ADA").**

149.   Ms. Villano restates all prior and subsequent paragraphs as if set forth verbatim herein.

150.   Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[9]

151.   This includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association[.]"[10]

---

[7] *See* § 21.2585.
[8] *See* § 21.259.
[9] 42 U.S.C. § 12112.
[10] § 12112(b)(4).

152. Ms. Villano was a covered person under the ADA and/or related to a covered person under the ADA based on her father's disability.

153. Ms. Villano was immensely qualified for her position, as demonstrated by her stellar work performance.

154. Plaintiff discriminated against Ms. Villano based on her association with her father by, *inter alia*, stripping away her job duties, demoting her, terminating her, and filing this action.

155. As a direct and proximate result of Plaintiff's violations of the ADA, Ms. Villano has incurred economic damages including, *inter alia*, lost wages, lost benefits, and lost earning capacity. Ms. Villano seeks reinstatement, or in the alternative, front pay.

156. As a direct and proximate result of Plaintiff's violations of the ADA, Ms. Villano has also incurred noneconomic damages including, *inter alia*, mental anguish, emotional pain, damage to reputation, and loss of enjoyment of life.

157. Ms. Villano also seeks compensatory and punitive damages in the maximum amount allowable by law based on the malice and/or reckless indifference Plaintiff demonstrated toward her protected rights under the ADA.[11]

158. Ms. Villano further seeks attorney's fees, expert fees, and costs incurred in pursuing her ADA claims.[12]

**Count Five:   Associational Disability Discrimination in Violation of the TCHRA.**

159. Ms. Villano restates all prior and subsequent paragraphs as if set forth verbatim herein.

160. Under TCHRA, "[a]n employer commits an unlawful employment practice if because of [disability] the employer: (1) fails or refuses to hire an individual, discharges an individual, or

---

[11] *See* 42 U.S.C. § 1981a.
[12] *See* § 12205.

discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment[.]"[13]

161. Ms. Villano was a covered person under the TCHRA and/or related to a covered person under the TCHRA based on her father's disability.

162. Ms. Villano was immensely qualified for her position, as demonstrated by her stellar work performance.

163. Plaintiff discriminated against Ms. Villano based on her association with her father by, *inter alia*, stripping away her job duties, demoting her, terminating her, and filing this action.

164. As a direct and proximate result of Plaintiff's violations of the TCHRA, Ms. Villano has incurred economic damages including, *inter alia*, lost wages, lost benefits, and lost earning capacity. Ms. Villano seeks reinstatement, or in the alternative, front pay.

165. As a direct and proximate result of Plaintiff's violations of the TCHRA, Ms. Villano has also incurred noneconomic damages including, *inter alia*, mental anguish, emotional pain, damage to reputation, and loss of enjoyment of life.

166. Ms. Villano also seeks compensatory and punitive damages in the maximum amount allowable by law based on the malice and/or reckless indifference Plaintiff demonstrated toward her protected rights under the TCHRA.[14]

167. Ms. Villano further seeks attorney's fees, expert fees, and costs incurred in pursuing her TCHRA claim.[15]

**Count Six:** **Interference and Coercion in Violation of the Family and Medical Leave Act of 1993 ("FMLA").**

168. Ms. Villano restates all prior and subsequent paragraphs as if set forth verbatim herein.

---

[13] TEX. LABOR CODE § 21.051.
[14] *See* § 21.2585.
[15] *See* § 21.259.

169. Under the FMLA, any eligible employee of a covered employer has the right to take unpaid leave for a period of up to 12 workweeks in any 12-month period "[i]n order to care for the…parent of the employee, if the [parent] has a serious health condition."[16]

170. Further, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."[17]

171. Ms. Villano worked for Plaintiff for over a year at the time of her termination and was otherwise qualified under the FMLA.

172. Plaintiff interfered with, restrained, or denied the exercise or the attempt to exercise her use of FMLA leave by, *inter alia*, stripping away her job duties because she took protected leave, demoting her because she took protected leave, terminating her because she took protected leave, and filing the present action against her because she took protected leave.

173. Plaintiff would not have taken these adverse actions against Ms. Villano had she not taken protected leave under the FMLA.

174. As a direct and proximate result of Plaintiff's violations of the FMLA, Ms. Villano has incurred economic damages including, *inter alia*, lost wages, lost benefits, and lost earning capacity. Ms. Villano seeks reinstatement, or in the alternative, front pay.

175. As a direct and proximate result of Plaintiff's violations of the FMLA, Ms. Villano has also incurred noneconomic damages including, *inter alia*, mental anguish, emotional pain, damage to reputation, and loss of enjoyment of life.

---

[16] 29 U.S.C. § 2612(a)(1)(C).
[17] § 2615(a)(1).

176. Ms. Villano also seeks liquidated damages in the maximum amount allowable by law based on the malice and/or reckless indifference Plaintiff demonstrated toward her protected rights under the FMLA.[18]

177. Ms. Villano further seeks attorney's fees, expert fees, and costs incurred in pursuing her FMLA claim.[19]

**Count Seven: Age Discrimination in Violation of the Age Discrimination in Employment Act of 1967 ("ADEA").**

178. Ms. Villano restates all prior and subsequent paragraphs as if set forth verbatim herein.

179. Under the ADEA, it is unlawful for an "employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]"[20]

180. Ms. Villano was over 40 years old at all relevant times.

181. Ms. Villano was immensely qualified for her position, as demonstrated by her stellar work performance.

182. Plaintiff discriminated against Ms. Villano based on her age by, *inter alia*, stripping away her job duties because of her age, demoting her because of her age, terminating her because of her age, and filing the present action against her because of her age.

183. Ms. Villano's age was the but for cause of these actions by Plaintiff.

184. As a direct and proximate result of Plaintiff's violations of the ADEA, Ms. Villano has incurred economic damages including, *inter alia*, lost wages, lost benefits, and lost earning capacity. Ms. Villano seeks reinstatement, or in the alternative, front pay.

---

[18] *See* § 2617(a)(1).
[19] *See* § 2617(a)(3).
[20] § 623(a)(1).

185. As a direct and proximate result of Plaintiff's violations of the ADEA, Ms. Villano has also incurred noneconomic damages including, *inter alia*, mental anguish, emotional pain, damage to reputation, and loss of enjoyment of life.

186. Ms. Villano also seeks liquidated damages in the maximum amount allowable by law based on the malice and/or reckless indifference Plaintiff demonstrated toward her protected rights under the ADEA.[21]

187. Ms. Villano further seeks attorney's fees, expert fees, and costs incurred in pursuing her ADEA claim.[22]

**Count Eight: Age Discrimination in Violation of the TCHRA.**

188. Ms. Villano restates all prior and subsequent paragraphs as if set forth verbatim herein.

189. Under TCHRA, "[a]n employer commits an unlawful employment practice if because of [age] the employer: (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment[.]"[23]

190. Ms. Villano was over 40 years old at all relevant times.

191. Ms. Villano was immensely qualified for her position, as demonstrated by her stellar work performance.

192. Plaintiff discriminated against Ms. Villano based on her age by, *inter alia*, stripping away her job duties because of her age, demoting her because of her age, terminating her because of her age, and filing the present action against her because of her age.

193. Ms. Villano's age was the but for cause of these actions by Plaintiff.

---

[21] *See* § 626(b).
[22] *See id.*
[23] TEX. LABOR CODE § 21.051.

194. As a direct and proximate result of Plaintiff's age discrimination in violation of the TCHRA, Ms. Villano has incurred economic damages including, *inter alia*, lost wages, lost benefits, and lost earning capacity. Ms. Villano seeks reinstatement, or in the alternative, front pay.

195. As a direct and proximate result of Plaintiff's age discrimination in violation of the TCHRA, Ms. Villano has also incurred noneconomic damages including, *inter alia*, mental anguish, emotional pain, damage to reputation, and loss of enjoyment of life.

196. Ms. Villano also seeks compensatory and punitive damages in the maximum amount allowable by law based on the malice and/or reckless indifference Plaintiff demonstrated toward her protected rights under the TCHRA.[24]

197. Ms. Villano further seeks attorney's fees, expert fees, and costs incurred in pursuing her TCHRA claim.[25]

**Count Nine: Retaliation in Violation of Title VII.**

198. Ms. Villano restates all prior and subsequent paragraphs as if set forth verbatim herein.

199. Under Title VII, an employer may not "discriminate against any of his employees or applicants for employment…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."[26]

200. Ms. Villano engaged in protected activity under Title VII by, *inter alia*, opposing the above-referenced unlawful discrimination, filing protected complaints with Plaintiff's human resources, hiring an attorney to pursue protected claims of discrimination, presenting those

---

[24] *See* § 21.2585.
[25] *See* § 21.259.
[26] 42 U.S.C. § 2000e-3.

protected claims to Plaintiff's legal counsel, and filing a charge of discrimination with the EEOC and TWC.

201. As a direct, but-for, and proximate result of these protected activities under Title VII, Plaintiff retaliated against Ms. Villano, *inter alia*, by stripping away her job duties, demoting her, terminating her, and filing the present lawsuit against her.

202. As a direct and proximate result of Plaintiff's retaliation in violation of Title VII, Ms. Villano has incurred economic damages including, *inter alia*, lost wages, lost benefits, and lost earning capacity. Ms. Villano seeks reinstatement, or in the alternative, front pay.

203. As a direct and proximate result of Plaintiff's retaliation in violation of Title VII, Ms. Villano has also incurred noneconomic damages including, *inter alia*, mental anguish, emotional pain, damage to reputation, and loss of enjoyment of life.

204. Ms. Villano also seeks compensatory and punitive damages in the maximum amount allowable by law based on the malice and/or reckless indifference Plaintiff demonstrated toward her protected rights under Title VII.[27]

205. Ms. Villano further seeks attorney's fees, expert fees, and costs incurred in pursuing her Title VII claims.[28]

**Count Ten:    Retaliation in Violation of the ADA.**

206. Ms. Villano restates all prior and subsequent paragraphs as if set forth verbatim herein.

207. Under the ADA, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual

---

[27] *See* § 1981a.
[28] *See* § 2000e-5(k)

made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]."[29]

208.    Ms. Villano engaged in protected activity under the ADA by, *inter alia*, opposing the above-referenced unlawful discrimination, filing protected complaints with Plaintiff's human resources, hiring an attorney to pursue protected claims of discrimination, presenting those protected claims to Plaintiff's legal counsel, and filing a charge of discrimination with the EEOC and TWC.

209.    As a direct, but-for, and proximate result of these protected activities under the ADA, Plaintiff retaliated against Ms. Villano, *inter alia*, by stripping away her job duties, demoting her, terminating her, and filing the present lawsuit against her.

210.    As a direct and proximate result of Plaintiff's retaliation in violation of the ADA, Ms. Villano has incurred economic damages including, *inter alia*, lost wages, lost benefits, and lost earning capacity. Ms. Villano seeks reinstatement, or in the alternative, front pay.

211.    As a direct and proximate result of Plaintiff's retaliation in violation of the ADA, Ms. Villano has also incurred noneconomic damages including, *inter alia*, mental anguish, emotional pain, damage to reputation, and loss of enjoyment of life.

212.    Ms. Villano also seeks compensatory and punitive damages in the maximum amount allowed by law based on the malice and/or reckless indifference Plaintiff demonstrated toward her protected rights under the ADA.[30]

213.    Ms. Villano further seeks attorney's fees, expert fees, and costs incurred in pursuing her ADA claims.[31]

---

[29] 42 U.S.C. § 12203(a).
[30] *See* 42 U.S.C. § 1981a.
[31] *See* § 12205.

**Count Eleven:       Retaliation in Violation of the FMLA.**

214.   Ms. Villano restates all prior and subsequent paragraphs as if set forth verbatim herein.

215.   It is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]."[32]

216.   Ms. Villano engaged in protected activity under the FMLA by, *inter alia*, opposing the above-referenced unlawful discrimination, interference, and coercion, filing protected complaints with Plaintiff's human resources, hiring an attorney to pursue protected claims of discrimination, presenting those protected claims to Plaintiff's legal counsel, and filing a charge of discrimination with the EEOC and TWC.

217.   As a direct, but-for, and proximate result of these protected activities, Plaintiff retaliated against Ms. Villano, *inter alia*, by stripping away her job duties, demoting her, terminating her, and filing the present lawsuit against her.

218.   As a direct and proximate result of Plaintiff's retaliation in violation of the FMLA, Ms. Villano has incurred economic damages including, *inter alia*, lost wages, lost benefits, and lost earning capacity. Ms. Villano seeks reinstatement, or in the alternative, front pay.

219.   As a direct and proximate result of Plaintiff's retaliation in violation of the FMLA, Ms. Villano has also incurred noneconomic damages including, *inter alia*, mental anguish, emotional pain, damage to reputation, and loss of enjoyment of life.

220.   Ms. Villano also seeks liquidated damages in the maximum amount allowable by law based on the malice and/or reckless indifference Plaintiff demonstrated toward her protected rights under the FMLA.[33]

---

[32] 29 U.S.C. § 2615(a)(2).
[33] *See* § 2617(a)(1).

221. Ms. Villano further seeks attorney's fees, expert fees, and costs incurred in pursuing her FMLA claim.[34]

**Count Twelve:        Retaliation in Violation of the ADEA.**

222. Ms. Villano restates all prior and subsequent paragraphs as if set forth verbatim herein.

223. Under the ADEA, it is "unlawful for an employer to discriminate against any of his employees or applicants for employment…because such individual, member or applicant for membership has opposed any practice made unlawful by [the ADEA], or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."[35]

224. Ms. Villano engaged in protected activity under the ADEA by, *inter alia*, opposing the above-referenced unlawful discrimination, filing protected complaints with Plaintiff's human resources, hiring an attorney to pursue protected claims of discrimination, presenting those protected claims to Plaintiff's legal counsel, and filing a charge of discrimination with the EEOC and TWC.

225. As a direct, but-for, and proximate result of these protected activities under the ADEA, Plaintiff retaliated against Ms. Villano, *inter alia*, by stripping away her job duties, demoting her, terminating her, and filing the present lawsuit against her.

226. As a direct and proximate result of Plaintiff's retaliation in violation of the ADEA, Ms. Villano has incurred economic damages including, *inter alia*, lost wages, lost benefits, and lost earning capacity. Ms. Villano seeks reinstatement, or in the alternative, front pay.

---

[34] *See* § 2617(a)(3).
[35] 29 U.S.C. § 623(d).

227.     As a direct and proximate result of Plaintiff's retaliation in violation of the ADEA, Ms. Villano has also incurred noneconomic damages including, *inter alia*, mental anguish, emotional pain, damage to reputation, and loss of enjoyment of life.

228.     Ms. Villano also seeks liquidated damages in the maximum amount allowed by law based on the malice and/or reckless indifference Plaintiff demonstrated toward her protected rights under the ADEA.[36]

229.     Ms. Villano further seeks attorney's fees, expert fees, and costs incurred in pursuing her ADEA claims.[37]

**Count Thirteen:     Retaliation in Violation of the TCHRA.**

230.     Ms. Villano restates all prior and subsequent paragraphs as if set forth verbatim herein.

231.     Under TCHRA: "[a]n employer…commits an unlawful employment practice if the employer…retaliates or discriminates against a person who, under this chapter: (1)  opposes a discriminatory practice; (2)  makes or files a charge; (3)  files a complaint;  or (4)  testifies, assists, or participates in any manner in an investigation, proceeding, or hearing."[38]

232.     Ms. Villano engaged in protected activity under the TCHRA by, *inter alia*, opposing the above-referenced unlawful discrimination, filing protected complaints with Plaintiff's human resources, hiring an attorney to pursue protected claims of discrimination, presenting those protected claims to Plaintiff's legal counsel, and filing a charge of discrimination with the EEOC and TWC.

---

[36] *See* § 626(b).
[37] *See id.*
[38] TEX. LABOR CODE § 21.055.

233. As a direct, but-for, and proximate result of these protected activities under the TCHRA, Plaintiff retaliated against Ms. Villano, *inter alia*, by stripping away her job duties, demoting her, terminating her, and filing the present lawsuit against her.

234. As a direct and proximate result of Plaintiff's retaliation in violation of the TCHRA, Ms. Villano has incurred economic damages including, *inter alia*, lost wages, lost benefits, and lost earning capacity. Ms. Villano seeks reinstatement, or in the alternative, front pay.

235. As a direct and proximate result of Plaintiff's retaliation in violation of the TCHRA, Ms. Villano has also incurred noneconomic damages including, *inter alia*, mental anguish, emotional pain, damage to reputation, and loss of enjoyment of life.

236. Ms. Villano also seeks compensatory and punitive damages in the maximum amount allowable by law based on the malice and/or reckless indifference Plaintiff demonstrated toward her protected rights under the TCHRA.[39]

237. Ms. Villano further seeks attorney's fees, expert fees, and costs incurred in pursuing her TCHRA claims.[40]

# X.
## AFFIRMATIVE DEFENSES

238. Ms. Villano hereby affirmatively pleads the following affirmative defenses.

239. As set forth in Ms. Villano's Motion to Dismiss, Plaintiff has failed to state a claim upon which relief can be granted as to fraud by omission, fraud, and breach of fiduciary duty.

240. Plaintiff's claims are barred because Plaintiff failed to mitigate its alleged damages.

241. Plaintiff's claims are barred by unclean hands.

---

[39] *See* TEX. LABOR CODE § 21.2585.
[40] *See* § 21.259.

242. Plaintiff's claims are barred by its prior material breaches of the Employment Agreement as set forth herein.

243. Plaintiff's claims are barred by judicial estoppel, equitable estoppel, and/or quasi-estoppel.

## XI.
## CONCLUSION

**BASED ON THE FOREGOING, PREMISES CONSIDERED**, Ms. Villano respectfully requests that her Motion to Dismiss Plaintiff's claims be granted, that Plaintiff take nothing by way of its lawsuit, that its request for declaratory judgment be denied in its entirety, and that following a just trial on the merits, judgment be entered against Plaintiff in Ms. Villano's favor as follows:

(a) economic damages as set forth above;

(b) noneconomic damages as set forth above;

(c) compensatory and punitive damages as set forth above;

(d) liquidated damages as set forth above;

(e) consequential and incidental damages as set forth above;

(f) reinstatement, or in the alternative, front pay as set forth above;

(g) attorney's fees, expert fees, and costs as set forth above; and/or

(h) any other relief to which Ms. Villano is entitled, whether at law or in equity.

Respectfully submitted,

**KAPLAN LAW FIRM, PLLC**
2901 Bee Cave Rd, Suite G
Austin, Texas 78746
P: (512) 943-2761 | F: (512) 692-2799

*/s/ Trenton Lacy*
**Trenton Lacy**
Texas State Bar No. 24106176
tlacy@kaplanlawatx.com

**COUNSEL FOR CARIE L. VILLANO**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served by electronic notification, per Local Rule 5.1(e) and Federal Rule of Civil Procedure 5(b)(2)(E), to the persons and entities registered with CM/ECF on Monday, December 15, 2025.

*/s/ Trenton Lacy*
Trenton Lacy