**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **WATERFLEET LLC,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL NO. 5-25-cv-01090-JKP-HJB** |
| | § | |
| **CARIE L. VILLANO,** | § | **JURY TRIAL REQUESTED** |
| *Defendant.* | § | |

---

**DEFENDANT-COUNTERPLAINTIFF'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF-COUNTERDEFENDANT'S MOTION TO DISMISS**

---

TO THE HONORABLE COURT:

Defendant-Counterplaintiff Carie L. Villano ("Ms. Villano" or "Counterplaintiff"), by and through her undersigned counsel of record, respectfully submits this Response in Opposition to Plaintiff-Counterdefendant WaterFleet, LLC's ("WaterFleet" or "Counterdefendant") Motion to Dismiss (Dkt. 28 ("Motion" or "Mot.")) Ms. Villano's counterclaims (Dkt. 22 ( "Counterclaims" or "Countercls.")) and, in support thereof, states as follows:

## I.    INTRODUCTION

WaterFleet's Motion to Dismiss attempts to evade accountability for its discriminatory and retaliatory conduct by imposing heightened pleading standards exceeding what Rule 8 and established case law require. The Motion fails because Ms. Villano has alleged far more than the "short and plain statement" necessary to survive dismissal.

Ms. Villano alleges she was one of few women in WaterFleet leadership, endured severe and pervasive sex-based harassment from a senior co-worker that management observed and failed to address, was systematically stripped of responsibilities while younger male employees received

expanded roles, was demoted after requesting FMLA leave to care for her disabled father, and was ultimately terminated and sued for entirely pretextual reasons in retaliation for complaining about this treatment. These detailed, factually specific allegations easily satisfy the plausibility standard and establish viable claims under Title VII, the ADA, the ADEA, the FMLA, and the TCHRA.

WaterFleet's arguments rest on selectively reading the counterclaims and mischaracterizing Ms. Villano's position. For those reasons and those detailed below, the Motion should be denied in its entirety.

## II.    LEGAL STANDARD

The Court must dismiss a complaint only when it fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Sims v. Allstate Fire & Cas. Ins. Co.*, 746 F. Supp. 3d 417, 420 (W.D. Tex. 2024). To survive dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the well-pleaded facts allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Under Rule 12(b)(6), a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *Lane*, 529 F.3d at 557.

## III.    ARGUMENT

**A.    Ms. Villano Has Adequately Pled Sex Discrimination and Hostile Work Environment Claims Under Title VII and the TCHRA (Counts II and III)**

WaterFleet's arguments for dismissing Ms. Villano's sex discrimination claims misapply the pleading standard and belittle well-pleaded allegations establishing plausible claims under both disparate treatment and hostile work environment theories.

### 1.    Ms. Villano Has Adequately Pled Disparate Treatment Based on Sex.

Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, prohibits two types of discrimination: intentional discrimination ('disparate treatment'), and that which has a disproportionately adverse effect on minorities ('disparate impact'). *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). These claims and those under the Texas Commission on Human Rights Act ("TCHRA") are evaluated together. *Lopez v. AT&T Mobility Services LLC*, 767 F. Supp. 3d 406, 421 (W.D. Tex. 2025).

Ms. Villano brings forth a disparate treatment theory. Disparate treatment claims under Title VII require: (1) an adverse employment action, (2) taken against a plaintiff because of her protected status. *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 599-600 (5th Cir. 2021). Ultimately, Ms. Villano must establish WaterFleet "had a discriminatory intent or motive" for taking the adverse employment action. *Ricci*, 557 U.S. at 577; *see also Giramur v. Wormuth*, SA-22-CV-529-OLG-HJB, 2023 WL 9645252, at *3 (W.D. Tex. Dec. 12, 2023) (Bemporad, Mag.). Her claims satisfy both elements and this causal link.

#### a.    Ms. Villano Alleges Adverse Employment Actions.

Ms. Villano alleges WaterFleet stripped away her job duties, demoted and reassigned her to report to a lower-level male supervisor, and terminated her employment. (Dkt. 22, Countercls. ¶¶ 78-85, 114, 122, 135.) WaterFleet does not dispute these actions would constitute adverse

employment actions if proven. (*See* Mot. at 3-6.) *See Prewitt v. Cont'l Auto.*, 927 F. Supp. 2d 435, 456 (W.D. Tex. 2013) ("[Termination is] ... sufficient to satisfy the 'adverse employment action' element.") (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764 (1998)).

### b. Ms. Villano Alleges the Adverse Actions Were Taken Because of Her Sex

Ms. Villano alleges these aforementioned adverse actions were taken "because of [her] sex." (Countercls. ¶ 135.) At this stage, Ms. Villano need only allege sufficient factual content to support a plausible inference of discriminatory intent, not prove it. *See Iqbal*, 556 U.S. at 678. Circumstantial evidence can establish discriminatory intent. *See Giramur*, 2023 WL 9645252, at *3.

Ms. Villano alleges the following specific facts and circumstances supporting a plausible inference of sex-based discriminatory intent:

- "[D]irector of Business Development Casey McDermand made an inappropriate and sexually suggestive comment toward Ms. Villano . . . . he suggested that Ms. Villano get out of the golf cart and dance in the pouring rain for the men. Ms. Villano was the only woman present among approximately eight golf carts, each carrying two to four men . . . ." (Countercls. ¶¶ 87-89.)
- "CEO Ken Cockrill has 11 direct reports, of which only one was female." (Countercls. ¶ 107.)
- "In the months following Mr. Cockrill's appointment, two senior female leaders . . . voluntarily left the company." (Countercls. ¶ 110.)
- "Mr. McDermand repeatedly entered Ms. Villano's office unannounced and uninvited, often initiating conversations that included deeply personal and inappropriate questions of a sexual and intrusive nature." (Countercls. ¶ 92.)
- "[A]t another work-sponsored event . . . Mr. McDermand inappropriately wrapped his arms and hands around Ms. Villano and brushed her hair and face without her permission . . . . He pulled her body into his chest and repeatedly remarked that Ms. Villano should shoot with her 'hips out' and her 'tits up.'" (Countercls. ¶¶ 93-94.)
- "Mr. McDermand . . . intrusively invaded Ms. Villano's personal space and touched her several times, including an incident where he came behind her desk . . . , brushed up against Ms. Villano, and put his hand over Ms. Villano's while she was seated." (Countercls. ¶ 101.)
- "When Ms. Villano stood up and admonished Mr. McDermand, he commented on her need for 'therapy.'" (Countercls. ¶ 103.)

- "Mr. Cockrill observed Mr. McDermand kneeling behind her desk, right up next to Ms. Villano with his face inches from Ms. Villano's. . . . yet he did not intervene." (Countercls. ¶¶ 105-106.)
- "On multiple occasions, Mr. McDermand touched Ms. Villano without consent by rubbing her shoulders without warning—at the workplace, in a company vehicle, and at an offsite event . . . ." (Countercls. ¶ 108.)
- "[A]fter Ms. Villano requested leave under the Family and Medical Leave Act . . . to care for her disabled father, Plaintiff demoted Ms. Villano and stripped Ms. Villano of several key job duties." (Countercls. ¶ 78.)
- "Mr. Cockrill stated that her marketing, sales operations, and website development responsibilities would remain unchanged. . . . Despite these assurances, Ms. Villano's job responsibilities were significantly reduced." (Countercls. ¶¶ 80-81.)
- "Ms. Villano witnessed younger, less experienced individuals—primarily male—being given expanded roles and greater visibility, while her responsibilities were diminished." (Countercls. ¶ 113.)
- "[H]er legal counsel sent correspondence outlining her complaints to Mr. Cockrill and HR Director . . . ." (Countercls. ¶ 116.)
- "Plaintiff never contacted Ms. Villano to discuss any of her concerns, and Ms. Villano is unaware of any corrective action taken by Plaintiff in response to her complaints." (Countercls. ¶ 119.)
- Her supervisors and all potential decisionmakers in her termination were males who were outside of her protected class. (Countercls. ¶¶ 73, 79.)

*Giramur* provides a useful framework for assessing whether these facts are sufficient as pled. 2023 WL 9645252, at *3. Unlike the plaintiff in *Giramur*,[1] Ms. Villano alleges numerous specific incidents establishing discriminatory intent rather than "bare assertion[s]" made "in the abstract." *Id.* In *Giramur*, to establish similarly situated male employees received more favorable treatment, the plaintiff generally alleged "male practitioners have used profane language in the workplace" and that "male . . . practitioners and physicians [have] colleagues in the GI clinic perform fibroscan[s] for their patients when their schedules were busy"—the very conduct the plaintiff was fired for. But she failed to identify a single male colleague by name, specifying when or where any such incident occurred, or providing any factual detail about the comparators'

---

[1] A Title VII sex discrimination case where the plaintiff alleged she was terminated for using profanity and failing to perform fibroscans while male colleagues engaged in the same conduct without consequence.

positions, supervisors, or conduct. *Id.* The court found these allegations "merely assert[ed] that it is so, in the abstract," and thus failed to plausibly allege that the plaintiff's termination was taken "because of" her sex as required under Title VII. *Id.*

Ms. Villano's allegations are fundamentally different. Ms. Villano alleges specific, dated incidents of sex-based harassment by a named co-worker (Casey McDermand), identifies witnesses to that harassment (Account Manager Matt Buchanan, Consumer Representative Manager Drew Cruthirds, CEO Ken Cockrill), alleges management's direct observation of the harassment, describes WaterFleet's failure to take corrective action after being notified of the harassment, and alleges temporal proximity between her complaints about harassment and the adverse employment actions. She further alleges that multiple "younger, less experienced. . . male[s] [were] being given expanded roles and greater visibility, while her responsibilities were diminished."[2] (Countercls. ¶ 113.) These are not abstract assertions discrimination occurred; they are factually detailed allegations of specific discriminatory conduct, management knowledge and tolerance, and differential treatment—all supporting a plausible inference WaterFleet's adverse employment actions were motivated by the same sex-based animus evident in these facts.

Ms. Villano further alleges that, after her attorney sent correspondence detailing her harassment complaints on April 3, 2025, WaterFleet "never contacted Ms. Villano to discuss any of her concerns" and took "no corrective action," then promptly terminated her five months later. (Countercls. ¶ 119.) This pattern of behaviors, inaction followed by adverse action, coupled with the temporal proximity, each support a plausible inference of discriminatory intent absent in *Giramur.*

---

[2] Although unnecessary at the pleading stage, Ms. Villano has further amended her pleading simultaneously with this response to include more information regarding these potential comparators.

### c.  WaterFleet's Arguments Misapply the Pleading Standard

WaterFleet argues Ms. Villano's allegations are "impermissibly vague and conclusory" without "additional factual allegations linking" the actions to her sex. (Mot. at 4.) This ignores the detailed allegations set forth above meant to satisfy a Rule 8 standard *before* discovery—not after.

WaterFleet further argues her counterclaims "lack any allegations about other employees who were similarly situated to Villano in supervisor and position, but who were treated differently because of their sex." (Mot. at 4.) This improperly imposes the *McDonnell Douglas* evidentiary framework's comparator requirement at the pleading stage. *Swierkiewicz v. Sorema N.A.* expressly rejected this heightened pleading standard. *See* 534 U.S. 506, 510-11 (2002) ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.").

Even if comparator evidence were required at the pleading stage, Ms. Villano alleged it: she "witnessed younger, less experienced individuals—primarily male—[3] being given expanded roles and greater visibility, while her responsibilities were diminished." (Countercls. ¶ 113.) WaterFleet criticizes this for failing to identify "these unidentified 'other individuals'" and their positions, supervisors, and qualifications. (Mot. at 4-5.) But requiring Ms. Villano to name individuals, detail qualifications, identify supervisors, and prove comparativeness—all before discovery—imposes the exact heightened pleading burden *Swierkiewicz* forbids. *See generally Swierkiewcz*, 534 U.S. at 515 ("[t]he Federal Rules do not contain a heightened pleading standard for employment discrimination suits.").

---

[3] WaterFleet argues the word "primarily" in Ms. Villano's allegation "plainly admits that women were among those given expanded roles and greater visibility." (Mot. at 5 (emphasis in original).) But that WaterFleet promoted *some* women does not establish it did not discriminate against Ms. Villano because of her sex. An employer's decision to promote *some* women does not immunize it from a sex discrimination claim by a woman it demoted and terminated. Under WaterFleet's logic, no employer with *any* female employees in leadership could ever be held liable for sex discrimination against any individual woman.

2. **Villano Has Adequately Pled a Hostile Work Environment Claim Based on Sex.**

WaterFleet's attempt to dismiss Ms. Villano's hostile work environment claim mirrors the same dismissiveness that allowed such pervasive misconduct to flourish in its workplace. WaterFleet's Motion writes-off repeated unwanted physical touching, explicit sexual comments, and degrading conduct as mere "shoulder-rubbing, close-talking, placing a hand over another's, and making an isolated (if crass) joke about dancing in the rain . . . ." and earnestly maintains "[t]hese are not the sorts of severe, pervasive, and hostile behaviors that Title VII and the TCHRA are designed to address." (Mot. at 9.) WaterFleet is wrong about the facts and the law.

To plead a hostile work environment claim, a plaintiff must allege: (1) she belongs to a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex, (4) the harassment affected a "term, condition, or privilege" of employment; and (5) "her employer knew or should have known of the harassment and failed to take prompt remedial action." *Giramur*, 2023 WL 9645252, at *3 (quoting *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005)). The harassing conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 433 (5th Cir. 2022). In this analysis, the court must look at the totality of the circumstances. *Lauderdale v. Tex. Dept. of Crim. Just. Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (factors include "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; . . . whether it unreasonably interferes with an employee's work performance, . . . and whether the complained of conduct undermined the plaintiff's workplace competence.") (citations omitted). Ms. Villano has pled specific, detailed facts demonstrating unwelcome, sex-based harassment

which, taken as true, give rise to a plausible hostile work environment claim. *See supra* at 4-5. Ms. Villano satisfies these elements.

### a. Ms. Villano's Allegations Are Specific and Detailed

*Pichardo v. Centene Co. of Tex., L.P.*, provides a useful framework for assessing whether Ms. Villano's hostile work environment allegations satisfy this pleading standard. *See generally*, No. 7:19-cv-00085-MA, 2020 WL 1308047, at *1 (S.D. Tex. Mar. 16, 2020) (Alvarez, J.).

In *Pichardo*, Judge Alvarez dismissed a hostile work environment claim where the plaintiff alleged she "was frequently subject to unwelcome touching, inappropriate staring, and comments by supervisor." *Id.* at *4. The Court found the plaintiff "[d]oes not specify the nature of the unwelcome touching, nor does she set out any of the comments she claims were inappropriate or the circumstances of the staring." *Id.* The plaintiff also failed to "allege the frequency of the conduct, its severity, whether it was physically humiliating, or whether it interfered with her work performance." *Id.* at *5. The Court held these allegations were insufficient because the plaintiff "fail[ed] to allege facts that support a claim that she was subjected to unwelcome sexual harassment . . . ." *Id.* at *6.

Ms. Villano's counterclaims stand in stark contrast to *Pichardo*. Unlike the plaintiff in *Pichardo* who failed to 'specify the nature' of the touching or 'set out any the comments,' Ms. Villano alleges specific incidents with dates (July 2024 golf event, September 2024 skeet-shooting event), locations (workplace, company vehicle, offsite events), named witnesses (Matt Buchanan, Drew Cruthirds, CEO Ken Cockrill), and the exact sexually explicit comments made ("hips out" and "tits up," suggesting she "dance in the pouring rain for the men"). (Countercls. ¶¶ 87-109.) She details the frequency (repeated office intrusions, multiple shoulder-rubbing incidents, conduct repeated "at each of the next two to three shooting stations"), the severity (unwanted physical

touching, explicit sexual commentary), and that the conduct was physically intrusive and humiliating (pulling her into his chest, invading her personal space behind her desk). (*Id.*) She alleges she "never reciprocated," found it "unwelcome, offensive, and unprofessional," and that when she objected, McDermand told her she needed "therapy." (Countercls. ¶¶ 103, 112.)

These allegations provide precisely what was missing in *Pichardo*: specific facts about the nature of the touching, the exact comments made, the circumstances and frequency of the conduct, its severity, whether it was physically threatening or humiliating, and who exactly witnessed it. This level of factual detail easily clears the pleading standard applied in *Pichardo*. *See* 2020 WL 1308047, at *1, 4-6.

WaterFleet argues the allegations are insufficiently "pervasive" because there are "only two dated incidents, separated by two months," and Ms. Villano failed to timely report the harassment. (Mot. at 8-9.) Both arguments fail. First, WaterFleet ignores Ms. Villano alleges repeated conduct across multiple months and settings: repeated office intrusions with sexually intrusive questions, multiple instances of unwanted shoulder rubbing at work and offsite, conduct behind her desk that CEO Cockrill personally observed, and sexually explicit commentary repeated at multiple shooting stations during a single event. (Countercls. ¶¶ 93-96, 101-06, 108-09.) The fact that two incidents are specifically dated does not mean the other conduct did not occur or was not pervasive. Second, WaterFleet's reliance on Ms. Villano's statement that her work performance remained strong (Countercls. ¶ 118) actually undermines its position: an employee's ability to maintain professionalism despite harassment does not negate the harassment's severity. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993) ("[T]itle VII comes into play before the harassing conduct leads to a nervous breakdown."). Ms. Villano's work performance can remain consistent while still subjectively finding the work environment hostile and abusive and impacting her

psychological well-being. *See id.* at 21-22. Whether this conduct was sufficiently severe or pervasive is a fact-intensive inquiry inappropriate for resolution at this stage.

The Motion should be denied as to Counts II and III.

**B.    Ms. Villano Has Adequately Pled Associational Disability Discrimination Under the ADA (Count IV).**

WaterFleet's arguments for dismissing Ms. Villano's ADA associational disability claim rest on three contentions: first, that no such cause of action exists in the Fifth Circuit under the ADA (Mot. at 10); second, that even if it does, it does not apply where an employee requests leave to care for a disabled relative (Mot. at 10-11); and third, that Ms. Villano has failed to allege a causal connection between the adverse employment actions and her association with a disabled relative (Mot. at 11). All three arguments fail.

**1.    Fifth Circuit Courts Recognize Associational Disability Claims Under the ADA[4]**

WaterFleet argues "the Fifth Circuit has never 'explicitly recognized a cause of action for discrimination based on association with a handicapped individual.'" (Mot. at 10) But this argument is incomplete.

The statutory text of the ADA expressly prohibits an employer from discriminating against an employee as a result of "the known disability of an individual with whom [the employee] is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). The Second, Sixth, Tenth, and Eleventh Circuits have each found this language to create an independent cause of action for associational disability discrimination. *See Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 432 (2d Cir. 2016)*; Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011)*; Hilburn*

---

[4] Ms. Villano concedes the TCHRA does not recognize associational disability discrimination claims and agrees to amend her counterclaims to dismiss Count V. *See Gomez v. Off. Ally, Inc.*, No. SA-18-CV-1101-XR, 2019 WL 2774367, at *8 (W.D. Tex. July 1, 2019), *aff'd*, 796 Fed. Appx. 224 (5th Cir. 2020) (citing *Spinks v. Trugreen Landcare, L.L.C.*, 322 F. Supp. 2d 784, 795 (S.D. Tex. 2004).

*v. Murata Elecs. N. Am. Inc.*, 181 F.3d 1220, 1230-31 (11th Cir. 1999); *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1085 (10th Cir. 1997). And while the Fifth Circuit has declined to formally recognize this cause of action, various District Courts within the Fifth Circuit have. *See, e.g.*, *Martinez v. Bexar Cnty*, No. SA-23-CA-00460-XR, 2026 WL 194940, at *4-5 (W.D. Tex. Jan. 16, 2026) (Rodriguez, J.) (denying summary judgment for Plaintiff's associational disability claim after "Plaintiff notified Defendant her son was disabled and needed full-time care . . . [a]nd Defendant terminated Plaintiff after she missed work to provide that care."); *McEachin v. CommuniCare Health Found.*, No. SA-24-cv-1108-FB-HJB, 2025 WL 2091952, at *6-7 (W.D. Tex. July 3, 2025) (Bemporad, Mag.) (recognizing associational disability discrimination claim under ADA but rejecting to extend it to employees who seek accommodations for disabled relatives); *Boshears v. Polaris Eng'g, Inc.*, No. 3:22-cv-00053, 2023 WL 2844930, at *4-6 (S.D. Tex. Mar. 27, 2023).

WaterFleet's argument is unavailing. Call it a § 12112(b)(4) claim or an associational disability discrimination claim, it makes no difference; the statute's language is clear. There is an established cause of action available for those discriminated based on their association with a disabled individual. *See Martinez*, 2026 WL 194940 at *4-5.

## 2. Ms. Villano Alleges Associational Discrimination, Not Failure to Accommodate, and Has Adequately Pled Causation

WaterFleet next argues that even if associational disability claims exist in the Fifth Circuit, Ms. Villano's claim fails because "the ADA does not require employers to provide reasonable accommodations to the employee so that the employee can care for a disabled third party." (Mot. at 10.) But this strawmans Ms. Villano's allegations.

WaterFleet correctly points the ADA's associational provision does not require employers to accommodate employees seeking leave or schedule modifications to care for disabled relatives.

*See also McEachin*, 2025 WL 2091952, at *4. But Ms. Villano does not assert a failure-to-accommodate claim. [5] She alleges WaterFleet took adverse employment actions against her *because of* her association with her disabled father—not that WaterFleet failed to accommodate her need for leave. (*See* Countercls. ¶¶ 78-85 and 151-54.) The fact is that WaterFleet stripped her of her job duties, demoted her, and ultimately terminated her because of her association with her disabled father, which it learned of only after she requested FMLA leave to care for him and discovered she was the primary caregiver for her father.

Courts recognize this distinction. In *Martinez*, the plaintiff notified her employer her son was disabled and would require full-time care. 2025 WL 194940, at *1-6. When her son's nurse unexpectedly could not provide care, she missed work to care for him herself. *Id.* at *2. Her employer terminated her shortly thereafter. *Id.* Plaintiff did not state a claim for failure to accommodate; she alleged her employer terminated her because of her association with her disabled son. *Id.* at *5. The court agreed and her claim survived summary judgment—a much heavier burden than the motion to dismiss at issue here. The court found she had sufficiently established a prima facie case: (1) she was qualified; (2) she suffered an adverse action; (3) her employer knew her son's disability; and (4) "[t]he temporal proximity between Plaintiff's care-related absence and Defendant's action support[ed] an inference of causation." *Id.*

Ms. Villano's allegations are analogous: Like the plaintiff in *Martinez*, Ms. Villano notified her employer her relative was disabled and required care. (Countercls. ¶¶ 74-75, 78.) *See Martinez*, 2025 WL 194940, at *1-6. Like the plaintiff in *Martinez*, Ms. Villano did not seek

---

[5] Ms. Villano's Count Four, which sets forth her ADA associational disability claim, neither directly nor indirectly describes a failure to accommodate. (Countercls. ¶¶ 149-58). WaterFleet may point to paragraphs 76-77, where Ms. Villano alleges she could perform her job "with reasonable accommodation." But read in context, these allegations establish she was *qualified*—not that WaterFleet legally needed to or failed to accommodate her. The very next paragraph makes the claim clear: WaterFleet learned of her father's disability and then demoted and terminated her. (Countercls. ¶ 78.) That is a § 12112(b)(4) claim, not an accommodation claim.

accommodations; both instead alleged they were punished for their association. *See id.* And like the plaintiff in *Martinez*, Ms. Villano suffered adverse actions shortly after WaterFleet learned of her father's disability. *See id.* (Countercls. ¶¶ 78-85, 122.) For this reason, WaterFleet's third argument that Ms. Villano failed to create a causal connection fares no better: If the temporal proximity supported an inference of causation sufficient to survive summary judgment in *Martinez*, it certainly supports an inference sufficient to survive a motion to dismiss here. *See generally* 2025 WL 194940, at *1-6.

## C.    Ms. Villano Has Adequately Pled Age Discrimination Under the ADEA and the TCHRA (Counts VII and VIII)

WaterFleet argues Ms. Villano has not alleged sufficient facts supporting her claim that she suffered adverse employment actions because of her age. (Mot. at 11-12.) According to WaterFleet, the only relevant allegations are that Ms. Villano was one of the oldest employees and that she witnessed younger, less experienced individuals receiving expanded roles while her responsibilities were diminished. (Mot. at 12 (citing Countercls. ¶¶ 67, 113, 180).) WaterFleet contends these allegations are insufficient because being one of the oldest employees does not show she was singled out based on age, and because Ms. Villano fails to identify the specific ages, qualifications, positions, or supervisors of the younger individuals who allegedly received favorable treatment. (Mot. at 12.) WaterFleet argues Ms. Villano's counterclaims suffer from the same deficiencies warranting dismissal in *Norsworthy*. (Mot. at 12.) *Norsworthy v. Hous. Indp. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023). But these arguments miss the mark and misapply the pleading standard.

### 1.    Ms. Villano Has Alleged She Was Treated Less Favorably Because of Her Age

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation,

terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In the context of a Rule 12(b)(6) Motion to Dismiss, "a plaintiff need not plead a prima facie case to state a plausible claim of age discrimination; however, the prima facie elements provide useful guideposts to analyze the sufficiency of the supporting factual allegations." *Schindel v. Edwards Aquifer Auth.*, No. 22-cv-00960, 2023 WL 2053983, at *4 (W.D. Tex. Feb. 13, 2023) (citing *Chhim v. Univ. of Tex.*, 836 F.3d 467, 470 (5th Cir. 2016); *Besser v. Tex. Gen. Land Office*, 834 F. App'x 876, 881 (5th Cir. 2020)).

WaterFleet attempts to use *Norsworthy* to convince the Court its *McDonnell Douglas* analysis proves Ms. Villano failed to set out the prima facie case. (*See* Mot. at 11-13.) But *Norsworthy* specifically states "in an employment discrimination case, the complaint need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth . . . in *McDonnell Douglas* . . .". *Norsworthy*, 70 F.4th at 336 (citing *Swiekiewicz*, 534 U.S. at 508). While Ms. Villano is still required to plead enough facts on all of the ultimate elements of her claim, *Norsworthy* still views the *McDonnell Douglas* as "helpful to reference" to "frame that inquiry"—not pivotal. *Norsworthy*, 70 F.4th at 336.

Even if Ms. Villano needed to establish a prima facie case at this stage, she has alleged facts satisfying each element. Ms. Villano must show: (1) she is within the protected class, (2) qualified for the position, (3) she suffered an adverse employment decision; and (4) was replaced by someone younger or treated less favorably than similarly situated younger employees. *Leal v. McHugh*, 731 F.3d 405 410-11 (5th Cir. 2023).

Ms. Villano alleges she was 51 years old at the time of the adverse actions—within the protected class of individuals over 40. (Countercls. ¶ 67.) *See* 29 U.S.C. §§ 631(a). She alleges she was qualified for her position, as demonstrated by her work performance that was as good as, or

better than, similarly situated colleagues. (Countercls. ¶¶ 64-65, 118.) She alleges she suffered multiple adverse employment actions: demotion, stripped job duties, reassignment, and termination. (Countercls. ¶¶ 78-85, 114, 122, 181-83.) And she alleges she witnessed younger, less experienced individuals—primarily male—being given expanded roles and greater visibility while her responsibilities were diminished.[6] (Countercls. ¶ 113.) These allegations satisfy the *McDonnell Douglas* framework and support a plausible inference that Ms. Villano was treated less favorably because of her age.

Further, WaterFleet argues Ms. Villano failed to allege anything about the roles given to younger individuals, whether she was qualified for those roles, or the specific ages and qualifications of those individuals. (Mot. at 12-13.) This argument fails for three reasons. First, Ms. Villano need not allege these details to survive dismissal—as discussed above, even basic well-pled allegations suffice at the pleading stage. *Schindel*, 2023 WL 2053983, at *4; *see also Brooks v. West Tex. Credit Union*, No. 24-cv-00116-DC-RCG, 2025 WL 3478517, at *2 (W.D. Tex. Sept. 22, 2025). Although WaterFleet perhaps expects Ms. Villano to possess detailed knowledge of specific job descriptions, reporting structures, and the compensation packages of the younger employees who received such responsibilities, Ms. Villano was removed of her duties and excluded from future strategic meetings.

Second, even assuming such details were required at this stage, Ms. Villano alleges she was stripped of her existing job duties in marketing, sales operations, and website development, and that these same younger, less experienced individuals received expanded roles while her responsibilities were diminished. (Countercls. ¶¶ 78-85, 113.) The fact that these individuals are described as less experienced directly supports the inference Ms. Villano was more qualified for

---

[6] As noted above, although entirely unnecessary, Ms. Villano is further contemporaneously amending her pleading to include additional detail.

any expanded roles they received—she possessed more experience than they did.

Third, questions about the precise scope of these roles, the exact qualifications required, and the comparative credentials of the individuals involved is a fact-intensive inquiry requiring discovery. This information would, in fact, be within the exclusive control and possession of WaterFleet. This inquiry is inappropriate for resolution at the motion to dismiss stage, and she should be permitted to develop her position through discovery.

*Brooks v. West Texas Credit Union* provides a useful framework for assessing whether Ms. Villano's allegations satisfy the pleading standard. 2025 WL 3478517, at *2. In *Brooks*, the court denied a motion to dismiss an ADEA claim where the plaintiff alleged she was 61 years old, possessed the necessary qualifications, was terminated when her position was dissolved, and a younger employee was hired for a role encompassing many of her former duties. *Id.* at *4. The Court found these allegations sufficient and raised a plausible inference of age discrimination; further assessment was fact-intensive and better suited for summary judgment. *Id.* at *4.

Ms. Villano's allegations are analogous: Like the plaintiff in *Brooks*, Ms. Villano alleges she was in the protected class, possessed the necessary qualifications and directly stated her work performance was equal to or better than colleagues, suffered adverse employment actions as discussed above, and younger, less experienced individuals received expanded roles while her responsibilities were diminished. (Countercls. ¶¶ 67, 78-85, 113-14, 118.) If the allegations in *Brooks* sufficed to survive dismissal, Ms. Villano's similar allegations clear that bar.

**2. Ms. Villano's TCHRA Age Discrimination Claim Survives Under the Same Analysis**

WaterFleet argues Ms. Villano's TCHRA claims should be dismissed for the same reasons as her federal claims. (Mot. at 11-13.) Neither party disputes that the TCHRA follows the same analysis as the ADEA. *Shackleford v. Deloitte & Touching, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999); *see also Brooks*, 2025 WL 3478517 at *8 ("[P]laintiff's TCHRA age discrimination claim

is evaluated under the same framework as her ADEA claim."). Because of this identical analysis, Ms. Villano's TCHRA age discrimination claims likewise survive dismissal.

The Motion should be denied as to Counts VII and VIII.

**D.    Ms. Villano Has Adequately Pled Retaliation Under Title VII, the ADA, the ADEA, and the TCHRA (Counts IX, X, XII, and XIII)**

WaterFleet's attempt to dismiss Ms. Villano's retaliation claims fundamentally mischaracterizes both the factual allegations and the legal claims. WaterFleet argues (1) that no protected activity preceded the adverse actions, and (2) that temporal proximity alone cannot establish causation. Both arguments fail because WaterFleet deliberately obscures the critical distinction between the adverse actions supporting Ms. Villano's underlying discrimination claims and the retaliatory adverse actions that followed her protected activity.

**1.    WaterFleet Conflates the Adverse Actions Supporting Different Claims**

To plead retaliation, Ms. Villano must allege: "(1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Saketkoo v. Adm'rs of the Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022). WaterFleet does not dispute opposing unlawful discrimination constitutes protected activities under Title VII, the ADEA, the ADA, and the TCHRA include. (Mot. at 13).[7] Instead, WaterFleet disputes Ms. Villano's counterclaims are "[s]ilent as to when most of the adverse employment actions occurred" and this supposed 'omission' is fatal to her retaliation claims because she "[m]ust allege that the adverse actions were taken *after* and *because of* the protected activities." (Mot. at 14 (emphasis in original).) Allow Ms. Villano to enlighten them:

---

[7] Ms. Villano also agrees with WaterFleet that the analysis conducted for retaliation claims under TCHRA mirrors federal law; these should be reviewed in tandem. (Mot. at 13.)

The adverse actions alleged in paragraphs 78-85 and 114 of her Counterclaims—the stripping of job duties, demotion, and reassignment—support Ms. Villano's discrimination claims under Title VII, the ADA, and the ADEA.[8] By contrast, Ms. Villano's retaliation claims are based on WaterFleet's behavior and response after Ms. Villano engaged in two key protected activities: (1) complaining about WaterFleet's discrimination through her lawyer's demand letter on April 3, 2025, and (2) again on May 30, 2025 when Ms. Villano filed her charge of discrimination with the EEOC and Texas Workforce Commission. (Countercls. ¶¶ 116, 120.)

WaterFleet argues "almost six months passed between the date that WaterFleet received the letter from [Ms.] Villano's lawyer and the date she was terminated." (Mot. at 15). But WaterFleet conveniently leaves out information about this temporal gap. After these two protected activities transpired, WaterFleet suddenly stated Ms. Villano was experiencing "[w]ork performance issues" it had never formally mentioned. (Countercls. ¶ 117.). After these two protected activities transpired, Ms. Villano and WaterFleet met for formal mediation on August 6, 2025 to resolve her claims of discrimination and it failed. (Countercls. ¶ 121.) And after the mediation failed, WaterFleet allowed Ms. Villano to continue working—while its attorneys no doubt sought pretextual justification to terminate her and prepare its retaliatory lawsuit—and waited until their Complaint was ready to file to terminate her on September 2, 2025 and sue her that very day. (Countercls. ¶¶ 122-23.) *See* Dkt. 1.

Lastly, responding to WaterFleet's argument that Ms. Villano has fallen short of showing a causal connection between WaterFleet's actions and her only theoretical basis being temporal proximity: temporal proximity may be sufficient to establish retaliation if the temporal proximity is 'very close.' *See Roy v. Veolia Environ. Servs.*, No. 1:19-cv-00443-MJT-ZH, 2020 WL 3914128,

---

[8] Alternatively, these actions form the basis of her sex discrimination, associational disability discrimination, and age discrimination claims.

at *4 (E.D. Tex. June 15, 2020) (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

Here, the relevant temporal period is not six months, but rather less than one month—from August

6, 2025 (failed mediation) to September 2, 2025 (termination and lawsuit filing). This timeline,

viewed in context of the pattern of events following Ms. Villano's protected activities,

demonstrates temporal proximity "very close" to support causation at the pleading stage.

Even if temporal proximity alone were insufficient, Ms. Villano alleges far more.

WaterFleet "never contacted Ms. Villano to discuss any of her concerns" and took no corrective

action after her lawyer's letter. (Countercls. ¶ 119.) Instead, WaterFleet suddenly claimed issues

never previously mentioned. (Countercls. ¶ 117.) WaterFleet then terminated her citing

"performance issues that it had never previously discussed with her," which Ms. Villano maintains

were "pretext for terminating her" and "a means of unlawfully attempting to avoid paying the

severance." (Countercls. ¶ 122.) This pattern demonstrates WaterFleet's retaliatory response to Ms.

Villano's protected activities independent of temporal proximity alone.

The Motion should be denied as to Counts IX, X, XII, and XIII.


## IV.    CONCLUSION

Ms. Villano has pled sufficient factual matter to state plausible claims for relief on all

challenged counts. WaterFleet's Motion misapplies the governing legal standards, selectively reads

the counterclaims, and attempts to resolve factual disputes that cannot be decided at the pleading

stage. The Motion should be denied in its entirety, and Ms. Villano should be permitted to proceed

with discovery on all thirteen counterclaims.

Respectfully Submitted,

This 2nd day of February, 2026.

**KAPLAN LAW FIRM, PLLC**
2901 Bee Cave Rd., Ste. G
Austin, Texas 78746
Telephone: (512) 553-9390
Telecopier: (512) 692-2788
www.kaplanlawatx.com

By: */s/ Gabriel Loya*
**Gabriel Loya**
Texas State Bar No. 24141905
gloya@kaplanlawatx.com

**Trenton Lacy**
Texas State Bar No. 24106176
tlacy@kaplanlawatx.com

**COUNSEL FOR DEFENDANT-COUNTERPLAINTIFF CARIE L. VILLANO**

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2026, a true and correct copy of the foregoing document was served upon all parties of record by the method indicated below:

*Via ECF:*

| | |
|---|---|
| Courtney D. Tedrowe (*pro hac vice*) | Eric A. Johnston |
| Nathan W. Celestine (*pro hac vice*) | Texas Bar No: 24070009 |
| MICHAEL, BEST & FRIEDRICH, LLP | MICHAEL, BEST & FRIEDRICH, LLP |
| 444 West Lake Street, Suite 3200 | 515 Congress Ave., Suite 2500 |
| Chicago, IL 60606 | Austin, Texas 78701 |
| Ph: 312.596.5852 | Ph: (512) 320-0601 |
| Fax: 312.222.0818 | Fax: (877) 398-5240 |
| *cdtedrowe@michaelbest.com* | *eric.johnston@michaelbest.com* |
| *nathan.celestine@michaelbest.com* | |

**COUNSEL FOR PLAINTIFF/COUNTER-DEFENDANT**

*/s/ Gabriel Loya*

**Gabriel Loya**